# CRIMINAL COMPLAINT

AO 91, Rev. 11/82 (V. Gauri Authorizing)

# 12-126

| | |
|---|---|
| **United States District Court** | **DISTRICT** Eastern District of Pennsylvania |
| UNITED STATES OF AMERICA<br>v.<br>STEVEN MAZER | **DOCKET NO.** |
| | **MAGISTRATE'S CASE NO.** *12 - 1310-M* |

Complaint for violation of Title 18 U.S.C. § 2251(a) (production of child pornography)

**FILED** SEP 10 2012 MICHAEL E. KUNZ, Clerk By _____ Dep. Clerk

| NAME OF JUDGE OR MAGISTRATE | OFFICIAL TITLE | LOCATION |
|---|---|---|
| Honorable HENRY S. PERKIN | U.S. Magistrate Judge | Philadelphia, PA |

| DATE OF OFFENSE | PLACE OF OFFENSE | ADDRESS OF ACCUSED (if known) |
|---|---|---|
| August 27, 2009 | Philadelphia, PA | 314 Hoffnagle Street, Apartment A, Philadelphia, PA |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

On or about August 27, 2009, within the Eastern District of Pennsylvania, the defendant STEVEN MAZER did knowingly employ, use, persuade, induce, entice, and coerce a female minor, approximately four (4) to six (6) years old, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, in violation of Title 18, United States Code, Sections 2251(a).

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

## SEE AFFIDAVIT ATTACHED HERETO

MATERIAL WITNESSES IN RELATION AGAINST THE ACCUSED:

| | |
|---|---|
| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | **SIGNATURE OF COMPLAINANT (official title)**<br><br>**OFFICIAL TITLE**<br>James P. Munjone<br>Special Agent, Homeland Security Investigations |

Sworn to before me and subscribed in my presence.

| SIGNATURE OF MAGISTRATE (1)<br>Honorable HENRY S. PERKIN, United States Magistrate Judge | DATE 9/7/2012 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, James P. Munjone, being duly sworn, state the following:

**Background**

1.      I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"). I am a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. As a federal agent, I am authorized to investigate violations of federal law and to execute warrants issued under the authority of the United States.

2.      As explained below, I have probable cause to believe that Steven MAZER, has used a child to produce child pornography in violation of 18 U.S.C. § 2251(a).

3.      This affidavit is based on my personal knowledge, review of public records and other documents, and information provided by other law enforcement officers. Because this affidavit is being submitted for the limited purpose of establishing probable cause to support a criminal complaint, I have not included every fact known to me concerning this investigation.

**Child Pornography Collector Characteristics**

4.      Over the course of my law enforcement career, I conducted a significant number of investigations concerning online child sexual exploitation, focusing specifically on crimes involving child pornography. I have personally interviewed a large number of child sex offenders who committed online child pornography crimes. I have also been informed of the studies of child sex offenders in general, and child pornography offenders in particular. Further, I have learned about the activities and characteristics of child pornography offenders from other law enforcement agents who focus on online child sexual exploitation, including those who investigate the offenses and those who analyze the computer equipment of the offenders.

1

5.     Based on my own experience and what I have learned from other individuals who specialize in the investigation and study of child pornography offenders, I know that the following traits and characteristics are generally found to exist and be true in cases involving individuals who collect child pornography:

a.     The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

b.     The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children.

c.     The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. This contact also helps these individuals to rationalize and validate their deviant sexual interest and associated behavior. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, P2P, e-mail, e-mail groups, chat, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles.

d.     The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children,

2

justifying those feelings and finding comfort for their illicit behavior and desires. Such individuals rarely destroy these materials because of the psychological support they provide.

      e.      The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

      f.      The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials.

      g.      Recent studies have shown that those who collect child pornography are more likely to be "contact offenders" with children. In a study published in the Journal of Abnormal Psychology, Vol. 15, No. 3, pp. 610-615, by Seto, Cantor, and Blanchard, titled "Child Pornography Offenses Are a Valid Diagnostic Indicator of Pedophilia," the authors concluded an interest in child pornography is a strong indicator of pedophilia. In December, 2010, Seto, Hanson, & Babchishin, published an article entitled "Contact Sexual Offending by Men With Online Sexual Offenses," in Sexual Abuse: A Journal of Research and Treatment. This article was a meta-analysis of a number of studies of possessors of child pornography. This was a meta-analysis of 24 studies of possessors of child pornography. In the studies that relied only upon subsequent arrests and/or convictions, the number of contact offenses with children ran from 4.6% to 13.3%. In the three studies in which the subjects were subject to polygraph

examinations, the percentages ranged from 32.3% to 84.5%, with the middle study finding

55.3%. In the remaining three studies which relied only upon self-reporting, the numbers ranged

from 32.8% to 57.4%. Each of the last three studies was unique. In Neutze, Seto, Schaefer,

Mundt, & Beier (in press at this time), the subjects were in Germany. They had sought

counseling on their own and were not referred by the criminal justice system. In the venue

where the study was conducted, therapists were not legally required to report the admissions of

their subjects (36.5%). In Quayle & Taylor (2003), the number of subjects was sample small (23)

and had established good rapport with the therapists (47.8%). Finally, in Coward, Gabriel,

Schuler, and Prentky (2009), the subjects reported anonymously (32.8%). In performing their

statistical analysis of these studies, Seto, Hanson, & Babchishin concluded that more than 50%

of those convicted of "possession only" admitted to at least one contact offense, when one relied

on more than an arrest or conviction for a new offense.

      6.     Based on my own experience in investigating computer-facilitated child sexual

exploitation crimes, and the experiences of other law enforcement agents with who I have

consulted, I believe that the majority of individuals who collect child pornography via the

Internet maintain their collections, increasingly in both online and offline storage media, even as

they relocate from one residential or work address to another.

### Background of the Investigations

      7.     On or about February 23, 2009, HSI executed a federal search warrant for the

member restricted website located at URL http://www.dreamzone.cc/portal ("DreamZone"),

which offered paid memberships ($99.00 per month via credit card) to individuals interested in

accessing the site's child pornography. As a result of the search warrant, HSI obtained web

access logs for individuals that visited DreamZone. These web access logs provided the date and

time of access, the visitor's e-mail address, the visitor's IP address, and the name of the image accessed.

     8.    On or about April 29, 2009, an administrative summons to Comcast yielded confirmation that kungfupanda13@comcast.net and alfrog13@comcast.net were registered to Steven MAZER, who was connected to the Internet from IP address 68.38.105.232. With this information, HSI reviewed the above-described web access logs for DreamZone and determined that MAZER visited DreamZone. HSI also determined that MAZER accessed numerous visual depictions of minors engaged in sexually explicit conduct on DreamZone. For example:

        a.    On February 12, 2009 at 4:54:26 p.m., kungfupanda13@comcast.net at IP address 68.38.105.232 visited Dreamzone and accessed "starskysh_boys-11yo-15yo.jpg."

        b.    On February 13, 2009 at 4:40:25 p.m., kungfupanda13@comcast.net at IP address 68.38.105.232 visited Dreamzone and accessed "pthc-russiangirl13yo003.jpg."

        c.    On February 14, 2009 at 8:11:23 a.m., kungfupanda13@comcast.net at IP address 68.38.105.232 visited Dreamzone and accessed "tn_schoolgirl-princess 003_004.jpg."

     9.    On April 27, 2010, HSI Special Agent Kelly Richards spoke with MAZER via telephone in an attempt to schedule a consensual interview. MAZER became angry with Special Agent Richards, refused to meet with agents, demanded a search warrant to review his computer, and abruptly hung up on Special Agent Richards.

**Previous Allegation that Mazer Sexually Assaulted a Child in Bensalem, Pennsylvania**

     10.    In December 2009, the Bensalem Township (PA) Police Department ("BPD") investigated an alleged sexual assault by MAZER of a 6-year old girl. This alleged sexual assault occurred on or about December 23, 2009. According to BPD's report, the alleged victim reported to M.E., the alleged victim's grandmother, that MAZER – who was babysitting the

5

alleged victim – "scratched [the alleged victim's] butt" and touched the alleged victim's vaginal

area.  According to M.E., the alleged victim stated about MAZER's touching: "Steven touched

my vagina, first it felt good, then it hurt."

11.     S.D., the alleged victim's mother, reported to BPD that the alleged victim attends

a karate school where MAZER works as an instructor.  Further, S.D. stated that MAZER gave

her $400 cash to buy Christmas presents for the alleged victim.  According to S.D., MAZER also

bought the alleged victim an expensive Snow White costume for Halloween.  S.D. stated that, in

mid-December 2009, MAZER took the alleged victim to the movies and put a diaper on her.

However, S.D. noted that the alleged victim is bathroom trained and does not require a diaper.

S.D. stated that, after this incident, she was cleaning her apartment and found another diaper of

the same brand behind her sofa.  According to S.D., she confronted MAZER, who denied all of

these allegations.

12.     On December 29, 2009, BPD and Pennsylvania Children & Youth Services

("CYS") interviewed the 6-year old alleged victim.  The alleged victim stated, "I don't know" in

response to several questions about whether she had been touched in the vaginal area or buttocks

by MAZER or anyone else.  When asked how often MAZER babysat her, the alleged victim

stated, "A lot, but not anymore."  The alleged victim then pointed to her buttocks and

breast/chest area.  When asked if anyone had touched her in those areas, the alleged victim

stated, "No, mommy said it wasn't truth."

13.     On or about December 31, 2009, BPD and CYS interviewed MAZER about the

reported sex offense.  MAZER stated "I didn't touch her anywhere."  However, MAZER

admitted putting a diaper on the 6-year old alleged victim because he "didn't want her to have an

accident."  MAZER admitted that he did not have permission to dress or undress the alleged

6

victim and that he did not discuss putting a diaper on the alleged victim with S.D., the alleged

victim's mother. Moreover, MAZER admitted having diapers in his backpack at the time of this

interview. MAZER said that he used to take care of other children, but that he no longer did so.

MAZER also confirmed that he did not have children of his own. When CYS inquired about two

incidents reported to CYS in 2005, MAZER said the accusations were expunged, and that he did

not have to tell anyone about what had happened. According to BPD's report, at this point,

MAZER began to smile and laugh. MAZER again denied having touched the alleged victim.

14.    On or about May 7, 2010, BPD and the District Attorney's Office in Bucks

County informed S.D., the alleged victim's mother, that no charges were being filed against

MAZER at that time due to "competency issues" with the alleged victim. To date, no charges

have been filed against MAZER concerning this alleged sexual assault in Bensalem.

**Current Case Investigation**

15.    On March 12, 2012, HSI served an administrative summons on Facebook. On

March 23, 2012, Facebook responded to the subpoena with information that Steven MAZER had

an active account with Facebook with the following associated email accounts:

stevenmazer@yahoo.com, steven.mazer@yahoo.com, and steven.mazer@comcast.net. From

February 2, 2012 through March 9, 2012, web access logs show MAZER's Facebook account

connected to the Internet from the IP address 76.99.132.169.

16.    On March 30, 2012, HSI served an administrative summons on Comcast

requesting subscriber information for IP address 76.99.132.169 on March 9, 2012 at 02:21:25

UTC. On April 2, 2012, Comcast responded with the following subscriber information:

Subscriber Name:    Ms. Judy Kurtz
Service Address:    314 Hoffnagle Street, Apt. A
                    Philadelphia, PA 19111

7

| | |
|---|---|
| Telephone #: | 215-499-3139 |
| Type of service: | High Speed Internet Service |
| Account Number: | 0951304431111 |
| Account Status: | Active |
| Current IP: | 76.99.132.169 |
| IP Assignment: | Dynamically Assigned |
| E-mail User IDs1: | Judy.Kurtz, LilyKurtz, stevenmazer13 |

17.     On April 18, 2012, in the Eastern District of Pennsylvania, United States

Magistrate Judge Lynne A. Sitarski issued an order for a pen register on Comcast Account

Number 0951304431111, associated with subscriber Judy Kurtz.

18.     On June 20, 2012, in the Eastern District of Pennsylvania, United States

Magistrate Judge Timothy R. Rice issued a second order for a pen register on Comcast Account

Number 0951304431111, associated with subscriber Judy Kurtz.[2]

**Pen Register Analysis**

19.     Beginning April 18, 2012, HSI Intelligence Research Analyst Jeffrey B. Smith

began his analysis of Comcast IP address 76.99.132.169 through the use of the court-ordered pen

register on Comcast Account Number 0951304431111, associated with subscriber Judy Kurtz.

(Comcast confirmed that the current IP address assigned to Account 0951304431111 was a

dynamically assigned IP address but would remain assigned to the above mentioned account

during the course of HSI's investigation.)  The data provided by Comcast was sent to HSI

technical operations and placed into a software program called Penlink X-Net ("X-Net").

Analyst Smith's use of X-Net with the court-ordered pen register on Comcast Account Number

0951304431111, associated with subscriber Judy Kurtz, yielded the following information:

---

1       All Comcast user IDs end in @comcast.net.
2       On August 17, 2012, Magistrate Judge Rice issued a third order for a pen register on this
same Comcast Account.

8

a.      From May 17, 2012 through August 5, 2012, IP address 76.99.132.169 had 2,073 exchanges of data with IP address 87.242.73.60.  On May 18, 2012, Analyst Smith entered IP address 87.242.73.60 into an Internet browser and it displayed as www.imgsrc.ru. Based on my training and experience, I know www.imgsrc.ru to be a website which allows image sharing and is often used for the purpose of viewing and or sharing child exploitation material.

b.      From May 4, 2012 through August 7, 2012, IP address 76.99.132.169 had 662 exchanges of data with IP address 65.19.175.52.  From August 24, 2012 through August 29, 2012, IP address 76.99.132.169 had 68 exchanges of data with IP address 65.19.175.52.  On May 5, 2012 and August 30, 2012, Analyst Smith entered IP address 65.19.175.52 into an Internet browser and it displayed as www.asstr.org.  Based on my review of www.asstr.org, I know this web site contains descriptions of various sexual fantasies, including fantasies involving the sexual abuse of children. I also know this website to be associated with other HSI child exploitation investigations.

c.      From May 10, 2012 through July 7, 2012, IP address 76.99.132.169 had 42 exchanges of data with IP address 72.55.189.168.  On May 11, 2012, Analyst Smith entered IP address 72.55.189.168 into an Internet browser and it displayed as www.abkingdom.com. Based on my training and experience, I know www.abkingdom.com to be a community website for diaper enthusiasts.  In addition, I know that diaper wearing and sexual interest and arousal involving diaper wearing is a type of paraphilia known as "Diaper Fetishism."  According to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (Text Revision) ("DSM-IV"), paraphilias are characterized by sexual attraction, urges, fantasies, and behaviors that can involve nonhuman objects or children.  Fetishism describes a paraphilia which involves the use

9

of non-living objects such as clothing, diapers, or other apparel. Pedophilia is a paraphilia which involves sexual desires, fantasies, or activities involving prepubescent children. In describing paraphilias, the DSM-IV recognizes that it is not uncommon for individuals to have more than one paraphilia.

d.      From June 17, 2012 through July 7, 2012, IP address 76.99.132.169 had four (4) exchanges of data with IP address 64.202.189.170. On August 21, 2012, IP address 76.99.132.169 had two (2) exchanges of data with IP address 64.202.189.170. On June 18, 2012 and August 30, 2012, Analyst Smith entered IP address 64.202.189.170 into an Internet browser and it displayed as www.nudification.com. Based on my training and experience, I know www.nudification.com to be a website frequented by individuals seeking child exploitation materials. I also know this website to be associated with other HSI child exploitation investigations.

e.      From May 22, 2012 through May 31, 2012, IP address 76.99.132.169 had 97 exchanges of data with IP address 209.17.88.100. On May 23, 2012, Analyst Smith entered IP address into an internet browser 209.17.88.100 and it displayed as www.photobucket.com. Based on my training and experience, I know www.photobucket.com to be a website which allows image sharing and is often used for the purpose of viewing and or sharing child exploitation material. I also know this website to be associated with other HSI child exploitation investigations.

f.      From May 10, 2012 through August 7, 2012, IP address 76.99.132.169 had 2,031 exchanges of data with IP address 184.82.14.114. On May 11, 2012, Analyst Smith entered IP address 184.82.14.114 into an Internet browser and it displayed as www.dprtube.com. From August 25, 2012 through August 29, 2012, IP address 76.99.132.169 had 34 exchanges of

10

data with IP address 72.55.189.168.  On August 30, 2012, Analyst Smith entered IP address

72.55.189.168 into an Internet browser and it displayed as www.dprtube.com.  Based on my

training and experience, I know www.dprtube.com to be another website for to diaper enthusiasts

featuring the ability to view and share video of diaper use and fetishes.

g.       From May 10, 2012 through August 7, 2012, IP address 76.99.132.169

had 1,646 exchanges of data with IP address 75.125.61.75.  From August 21, 2012 through

August 29, 2012, IP address 76.99.132.169 had 56 exchanges of data with IP address

75.125.61.75.  On May 11, 2012 and August 30, 2012, Analyst Smith entered IP address

75.125.61.75 into an Internet browser and it displayed as www.diapershannon.com.  Based on

my training and experience, I know www.diapershannon.com to be a site in which members can

chat and share stories of adult diaper wearing and adult diaper fantasy.  I know

www.diapershannon.com to be another website associated with "Diaper Fetishism."

h.       From May 26, 2012 through August 3, 2012, IP address 76.99.132.169

had 47 exchanges of data with IP address 85.17.233.161.  On August 7, 2012, Analyst Smith

entered IP address 85.17.233.161 into an internet browser and it displayed as www.ab-dl.com.

Based on my training and experience, I know that www.ab-dl.com stands for "www.adult baby

and diaper lovers.com" and that it is another website associated with "Diaper Fetishism."

i.       On July 10, 2012, IP address 76.99.132.169 had six (6) exchanges of data

with IP address 199.59.88.175.  On August 7, 2012, Analyst Smith entered IP address

199.59.88.174 into an internet browser and it displayed as www.cam4.com.  Based on my

training and experience, I know that www.cam4.com is a website which allows image sharing

and is often used for the purpose of viewing and or sharing child exploitation material.  I also

know that this website is associated with other HSI child exploitation investigations.

11

j.      From June 19, 2012 through July 24, 2012, IP address 76.99.132.169 had

20 exchanges of data with IP address 77.247.179.135.  On August 7, 2012, Analyst Smith

entered IP address 77.247.179.135 into an internet browser on 8/7/2012 and it displayed as

www.empflix.com. Based on my training and experience, I know that www.empflix.com to be a

website which allows image sharing and is often used for the purpose of viewing and or sharing

child exploitation material.  I also know that this website is associated with other HSI child

exploitation investigations.

k.      From May 26, 2012 through June 18, 2012, IP address 76.99.132.169 had

45 exchanges of data with IP address 69.64.36.167.  On August 7, 2012, Analyst Smith entered

IP address 69.64.36.167 into an internet browser and it displayed as www.Naturist-top.com.

Based on my training and experience, I know that www.Naturist-top.com to be a website which

allows image sharing and is often used for the purpose of viewing and or sharing child

exploitation material.

l.      From June 5, 2012 through June 6, 2012, IP address 76.99.132.169 had 16

exchanges of data with IP address 207.232.22.55. From August 22, 2012 through August 29,

2012, IP address 76.99.132.169 had six (6) exchanges of data with IP address 207.232.22.55.  On

August 7, 2012 and August 30, 2012, Analyst Smith entered IP address 207.232.22.55 into an

internet browser and it displayed as www.shareaza.com.  Based on my training and experience, I

know that www.shareaza.com to be a website which allows image sharing and is often used for

the purpose of viewing and or sharing child exploitation material.   I also know that this website

is associated with other HSI child exploitation investigations.

m.      On August 4, 2012, IP 76.99.132.169 had 14 exchanges of data with IP

address 208.87.35.107.  On August 7, 2012, Analyst Smith entered IP address 208.87.35.107 into

an internet browser and it displayed as www.teenhello.com. Based on my training and experience, I know www.teenhello.com to be a website which allows image sharing and is often used for the purpose of viewing and/or sharing child exploitation material. I also know that this website is associated with other HSI child exploitation investigations.

**Evidence that MAZER Produced Child Pornography**

20.     On September 5, 2012, U.S. Magistrate Judge Henry S. Perkin issued a search warrant for 314 Hoffnagle Street, Apartment A, Philadelphia, PA 19111. On September 6, 2012, HSI executed that search warrant. HSI seized a computer, Samsung S860 digital camera, SanDisk "Ultra 2" 4GB memory card, and other storage devices from the premises. HSI's forensic examination has revealed that the SanDisk memory card found in the Samsung digital camera contains images of Steven MAZER sexually molesting a female child that is approximately four (4) to six (6) years old. Specifically, MAZER is shown in these images to be digitally penetrating the child. Based on HSI's forensic examination of the SanDisk memory card, I believe the images were created on or about August 27, 2009. Both the SanDisk memory card and the Samsung camera state that they were manufactured in China.

## Conclusion

21.     Based upon the information above, I have probable cause to believe that Steven

MAZER has used a child to produce child pornography in violation of 18 U.S.C. § 2251(a).

JAMES P. MUNJONE
Special Agent
Homeland Security Investigations

Sworn and subscribed to before me
this _____ day of September, 2012.

HONORABLE HENRY S. PERKIN
United States Magistrate Judge

14